UNITED STATES of America,
Appellee/Cross–Appellant,

v.

Leon G. FETERL,
Appellant/Cross–Appellee.

Nos. 87–5316, 87–5321.

United States Court of Appeals,
Eighth Circuit.

Submitted April 14, 1988.

Decided June 16, 1988.

Stuart L. Tiede, Sioux Falls, S.D., for appellant/cross-appellee.

Robert E. Bdger, Washington, D.C. and Philip N. Hogen, U.S. Atty., Sioux Falls, S.D., for appellee/cross-appellant.

Before JOHN R. GIBSON and BEAM, Circuit Judges, and BENSON,[*] District Judge.

* The HONORABLE PAUL BENSON, Senior United States District Judge for the District of North Dakota, sitting by designation.

BEAM, Circuit Judge.

Leon G. Feterl appeals from an order of the district court granting appellee United States of America summary judgment on its claim for $100,000 and prejudgment interest. The United States of America cross-appeals from the court's order granting Feterl summary judgment on his rent claim for $9,710.86. We affirm.

## I. APPELLANT'S APPEAL

### A. Background

In February of 1978, Leon Feterl was a minority shareholder (40%) in Forward, Inc. (Forward). On February 17, 1978, Feterl entered into an agreement (guaranty) in which he guaranteed a loan made to Forward by the United States Department of Commerce Economic Development Administration (EDA). Feterl's guaranty was in the amount of $100,000. The total loan was for $1,100,000.

On the same day, apparently, Feterl entered into a separate shareholders' agreement involving Forward. The agreement gave Feterl the option of purchasing a 100% interest in Forward in the event that the EDA *"officially declares [Forward in] default * * * and * * * require[s] [Feterl] to make substantial payment on his guaranty."* (Emphasis added.)

From the beginning, Forward had difficulty in repaying the EDA loan. By September of 1980, EDA suggested that Forward consider seeking protection under the Bankruptcy Code. On September 15, 1980, Forward filed a petition for reorganization under Chapter 11.

From the date of bankruptcy until August 26, 1983, the bankruptcy estate's assets continued to lose value. On August 26, 1983, the bankruptcy court converted the case from a reorganization under Chapter 11 to a Chapter 7 liquidation.

On June 23, 1986, the EDA sent Feterl a letter requesting information as to how Feterl planned to meet his obligations under the guaranty. The EDA then filed a complaint in the district court on September 12, 1986. Because there were no genuine issues of material fact, the matter was decided favorably to the EDA upon its motion for summary judgment.

### B. EDA'S CLAIM FOR $100,000
#### 1. Statute of Limitations

Feterl contends that the EDA action is time barred because the six-year statute of limitations began to run at some point prior to September 12, 1980. We disagree.

Where the United States brings an action based upon an express contract, the action is barred unless the complaint is filed within six years after the cause of action accrues. 28 U.S.C. § 2415(a). Feterl argues that the EDA's cause of action accrued upon the EDA having sufficient information to conclude that it would eventually be required to accelerate payments on the loan made to Forward. At the latest, Feterl claims, sufficient information existed to infer acceleration of the loan on the day prior to the date that the EDA counseled Forward to consider filing a petition in bankruptcy.

By contrast, the EDA argues that its cause of action did not accrue until it made its demand that Feterl pay the guaranteed amount, *i.e.*, the day in June of 1986 on which the letter was sent. Alternatively, the EDA suggests that its official acceleration of the loan amount, as manifested by its filing a proof of claim in the bankruptcy court, was the event that triggered the commencement of the limitation period. In either event, the statutory period would not have begun to run until some time after September 15, 1980.

█ Before the limitations period begins to run, a lender must, at least, have invoked the acceleration clause in the loan agreement. *See United States v. Gilmore,* 698 F.2d 1095, 1097 (10th Cir.1983); *United States v. Cardinal,* 452 F.Supp. 542, 547–48 (D.Vt.1978). *Gilmore,* however, seems to support the first theory proposed by the EDA. That is, that the time begins to run when a demand for payment under the guaranty is made. This, of course, would

usually be, as in this case, at a time after an acceleration clause has been invoked against a borrower. *See* 698 F.2d at 1097. On the other hand, *Cardinal* implies that demand made to the borrower for payment in full under an acceleration clause signals the accrual of a cause of action on a guaranty. 452 F.Supp. at 544. However, we need not resolve this issue in this case because the EDA did not seek to accelerate the loan payments or make demand under the guaranty prior to September 15, 1980.

■ As a general rule, where the lender has fully reserved the right to respond to a borrower's default in whatever manner it deems proper, "affirmative action by the creditor must be taken to make it known to the debtor that [the creditor] has exercised his option to accelerate." *See Cardinal*, 452 F.Supp. at 547 (quoting *Moresi v. Far West Serv., Inc.*, 291 F.Supp. 586, 588 (D.Haw.1968)). Feterl failed to allege or show any such affirmative conduct prior to the date of the filing of the proof of claim in the bankruptcy action.

■ Because acceleration clauses are generally for the benefit of the creditor, courts tread lightly on the creditor's freedom to decide whether acceleration is immediately necessary upon the occurrence of a default. *See American Jet Leasing v. Flight Amer., Inc.*, 537 F.Supp. 745, 748 (W.D.Va.1982). Therefore, acceleration is seldom implied, and courts usually require that an acceleration be exercised in a manner so clear and unequivocal that it leaves no doubt as to the lender's intention and no doubt that the borrower is apprised that the option has been exercised. *Id.* at 748–49.

■ The guaranty reserved to the EDA the "uncontrolled discretion" to grant extensions, releases, renewals and forbearances to the borrower and the guarantor. Thus, there is no basis to conclude that any of the EDA's conduct prior to the filing of the bankruptcy proceeding violated the allocation of risk agreed upon by the EDA and Feterl. The counseling of Forward by the EDA with regard to bankruptcy was not an unequivocal exercise of the acceleration clause.

Initially, Forward's bankruptcy would prolong the status quo and would not serve to require an acceleration of the payment of the loan. Indeed, unlike in *United States v. Nehl*, 599 F.Supp. 324, 326–27 (D.S.D.1984) (where application of liquidation proceeds exceeded the amount due as installments, and was held to be sufficient proof that a lender had exercised his right to accelerate and had thus triggered the limitation period) here, the EDA's pre-bankruptcy activities manifested an intent to attempt to work with the debtor and to not force liquidation. Therefore, the EDA did not cause the statute of limitations to start to run at that time. *See Gilmore*, 698 F.2d at 1097–98 (agreement made to keep debtor functioning did not trigger statute of limitations).

Accordingly, we affirm the district court's ruling that the EDA filed its action within the applicable limitation period.

## 2. Estoppel

■ Feterl's second claim is that the EDA is estopped from pursuing its claim on Feterl's guaranty. Certain principles outline the estoppel doctrine:

"If one person makes a definite misrepresentation of fact to another person having reason to believe that the other will rely upon it and the other in reasonable reliance upon it does an act ... the first person is not entitled

. . . .

"(b) to regain property or its value that the other acquired by the act, if the other in reliance upon the misrepresentation and before discovery of the truth has so changed his position that it would be unjust to deprive him of that which he thus acquired."

*Heckler v. Community Health Serv.*, 467 U.S. 51, 59, 104 S.Ct. 2218, 2223, 81 L.Ed.2d 42 (1984) (quoting Restatement (Second) of Torts § 894(a) (1979)). Moreover, in asserting estoppel against the government, a private party cannot prevail without at least demonstrating that the traditional elements

of estoppel are present. *Id.* at 61, 104 S.Ct. at 2224.

■ Feterl claims that he believed that the EDA was under a duty to declare Forward in default at the earliest sign of trouble. Feterl believed this because under the shareholders' agreement, Feterl could only purchase Forward upon such a declaration, and was precluded from inducing the EDA from making such a declaration. However reasonable Feterl's belief might have been were the stock agreement viewed in isolation, viewing the agreement in conjunction with the guaranty makes it clear that the EDA made no such representation and that any reliance by Feterl was not reasonable.

We believe that paragraph (a) of the guaranty dispenses with Feterl's estoppel claim. The EDA therein reserved the following powers:

> To modify or otherwise change any terms of all or any part of the Liabilities or the rate of interest thereon (but not to increase the principal amount of the Note of the Debtor to Lender or the interest rate thereon), to grant any extension or renewal thereof and any *other indulgence* with respect thereto, and to effect any release, compromise or settlement. (Emphasis added).

Paragraphs (b) through (e) of the guaranty reserve further powers to the EDA which powers make it unambiguously clear that the EDA had interests that were at odds with Feterl's, and which the EDA had no intention of subordinating to Feterl.

Having found no misrepresentation and no possibility of a reasonable reliance by Feterl, we find that any application of the estoppel doctrine by the district court would have been error. Since the circumstances surrounding the signing of both documents are undisputed and the documents themselves unambiguous, this was an issue properly determined upon a motion for summary judgment. *See Washington Metro Area Trans. v. Mergentime Corp.*, 626 F.2d 959, 961 (D.C.Cir.1980). Our disposition of the estoppel claim likewise disposes of Feterl's breach of contract claim because the EDA was under no con-

tractual duty to declare a default and demand payment in order that Feterl could purchase control of Forward.

### 3. EDA'S Claim for Prejudgment Interest

■ We have reviewed Feterl's claim that the district court abused its discretion in awarding prejudgment interest from the date of demand on June 23, 1986. First, we agree with the district court that the letter of June 23, 1986, was a demand for payment. Second, we find no abuse of discretion in the interest award. Viewing the matter most favorably to Feterl, we find that he had use of the guaranty amount for the almost three years after Forward's bankruptcy was converted into a Chapter 7 proceeding. If anything, Feterl reaps a windfall by the government having waited until 1986 to demand payment. *Cf. Heckler v. Community Health Serv.*, 467 U.S. at 61–62, 104 S.Ct. at 2224–2225 (result of government's "misconduct" not necessarily adverse).

## II. APPELLEE'S CROSS–APPEAL: FETERL'S COUNTERCLAIM

### A. Background

In addition to guaranteeing the EDA loan, Feterl had also guaranteed rent payments that Forward owed pursuant to a lease agreement with Greater Huron Development Corp. Eventually, Feterl purchased the real estate outright and became Forward's landlord under the lease.

From August 26, 1983, through March 16, 1984, property of the estate was stored on Feterl's land—but no rent payments were made. Forward finally conducted its liquidation sale on March 15 and 16, 1984—with the sale taking place on Feterl's property.

At some point in late 1983, Feterl contacted the United States about removing its collateral from Feterl's property. A loan specialist from the Small Business Administration replied by letter on January 31, 1984:

> [T]he SBA will take steps to settle the claim of the landlord [Feterl] under the

 

present lease agreement, also taking into consideration the liability of Mr. Feterl under his guaranty executed in favor of the financing institution.

Record at 35.

B. Nature of Feterl's Claim

 The district court interpreted the letter as a modification of the guaranty to the extent that the rent due Feterl would be considered partial satisfaction or reduction of Feterl's payment obligation under the agreement. Thus, the court awarded the United States $100,000 MINUS $9,710.86 (the rent due) for a total of $90,239.14 and then awarded prejudgment interest on that amount only. The court's construction was consistent with the EDA's letter in which the amount owing under the guaranty was to be reduced as indicated.

Whether or not the letter of January 31, 1984, worked a modification of the agreement, we believe that the amount claimed by Feterl should be credited against the guaranty obligation. The parties agree that if Feterl's claim is one in recoupment, it is not barred by sovereign immunity and was properly considered by the district court pursuant to Fed.R.Civ.Pro. 13. We believe that this was a claim in recoupment.

As noted, the government wrote Feterl that it would settle the rent claim in consideration of the Feterl guaranty. The government then continued to store its collateral on Feterl's property. Record at 22–23. The collateral stored had been used by the business entity whose loan Feterl had guaranteed. The proceeds of the liquidation sale held on Feterl's property went to satisfy the loan that Feterl guaranteed. Clearly, Feterl's claim arises out of the EDA–Forward loan transaction and is not subject to an immunity defense. Thus, we affirm the district court order that Feterl owed the EDA $90,239.14, plus prejudgment interest on that amount. This holding is consistent with prior cases. *See, e.g., Frederick v. United States*, 386 F.2d 481, 488–89 (5th Cir.1967) (guarantor claim within same transaction where government breached duties specified in guarantee); *Federal Savings & Loan Ins. Co. v. Quinn*, 419 F.2d 1014, 1016–19 (7th Cir.

1969) (claim that payment on a note owing to FDIC was not credited merely sets up a matter in recoupment arising out of the same transaction and thus sovereign immunity is waived to the extent that the government's claim may be diminished).

III. CONCLUSION

Accordingly, the order of the district court is affirmed in all respects.