14 F.3d 598
NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
 UNITED STATES of America, Plaintiff-Appellee,
v.
NEUDAI, INCORPORATED; A.W. Thomas, III, Defendants-Appellants.
 No. 92-2389.
 United States Court of Appeals, Fourth Circuit.
 Argued June 8, 1993.
Decided Dec. 16, 1993.
 
 Appeal from the United States District Court for the District of South Carolina, at Greenville, No. CA-91-2508; William M. Catoe, Jr., Magistrate Judge.
 Nathaniel Heyward Clarkson, III, Gibbes & Clarkson, P.A., Greenville, SC, for defendants-Appellants.
 Henry D. Knight, Jr., Asst. U.S. Atty., Columbia, SC, argued (John S. Simmons, U.S. Atty, on brief), for plaintiff-appellee.
 D.S.C.
 AFFIRMED.
 Before NIEMEYER and HAMILTON, Circuit Judges, GARBIS, United States District Judge for the District of Maryland, sitting by designation.
 OPINION
 PER CURIAM:
 
 
 1
 Neudai, Inc. (Neudai) and A.W. Thomas, III (Thomas) appeal the district court's determination, after a non-jury trial, that they are liable, as promisor and guarantor respectively, on a note executed in connection with a Small Business Administration (SBA) loan made in 1980. The Appellants contend that (1) the loan was accelerated in February or June 1985 and thus the statute of limitations had run; (2) a one year extension of the interest-only repayment period was a modification that relieved the guarantors of any liability; and (3) the Doctrine of Laches bars recovery by the Government. For the reasons that follow, we affirm.
 
 I.
 
 2
 On December 23, 1980, Mome Capital Corporation (Mome), a small business investment company licensed by the SBA, loaned a total of $125,000 to Neudai. The loan required payments as follows:
 
 
 3
 1. First 12 months payments of $1,614.58 applied to interest only on $100,000.
 
 
 4
 2. Next 48 months payments of $2,808.48 applied to interest and principal on $100,000.
 
 
 5
 3. Final payment after 5 years of $40,500.00 consisting of $25,000 principal and $15,500 of interest.
 
 
 6
 The note contained an acceleration clause which provided:
 
 
 7
 on the default in the payment of any instalment of principal and interest ... the holder hereof, at its election, may accelerate the unpaid balance of principal and all accrued interest due and declare the same payable at once, without notice or demand on any party or parties to this instrument.
 
 
 8
 Thomas signed the note in both his capacity as president of Neudai and as a guarantor. The loaned money was used by Neudai to purchase three Po-Folks restaurants; Mome took a security interest in the purchased assets.
 
 
 9
 As early as July of 1981, the note was in arrears. In late 1981, the three Po-Folks restaurants were sold by Neudai to a corporation known as BAR-J-FOUR and certain individuals including James Anderson (Anderson). As part of this sale, the purchasers assumed the note.[1] In 1982, Mome and the buyers of the restaurants agreed to a one year extension of interest-only payments.
 
 
 10
 Although there were a number of letters from Mome to various individuals with liability on the note, only two are pertinent to this appeal. The first one, dated February 1, 1985 was from Jimmy Clark (Clark), the manager of Mome, to Thomas stating the balance due on the note (principal and interest) and asked for information about other possible guarantors of the note.
 
 
 11
 The second pertinent letter, dated June 25, 1985, was written by Clark to Richard Speight, Anderson's attorney stating:
 
 
 12
 This is to confirm the information furnished your office this morning concerning the balance due us on the Po Folks in Charlotte:
 
 Principal $94,251.19
 Accrued interest to date 18,220.62
 
 
 Total $112,471.81
 
 
 
 13
 It is my understanding that we will receive $10,000 upon receipt of this information and the balance within 30 days.
 
 
 14
 On July 12, 1985, a check for the $18,220.62 of accrued interest was paid to Mome. No further payments were made.
 
 
 15
 On August 5, 1985, the note was assigned to the SBA. The SBA took no action regarding this note until a May 17, 1988 letter from the SBA to Thomas advising of the delinquency of the guaranteed note. There was a further two year period of dormancy until May 11, 1990, when the SBA wrote Thomas and demanded payment of the note.
 
 
 16
 This action was instituted by the SBA on August 20, 1991. Cross-motions for summary judgment were denied. The parties consented to a non-jury trial before Magistrate Judge Catoe which resulted in judgment for the SBA.
 
 II.
 
 17
 Appellants raise three issues. First, was it error for the Magistrate Judge to find that neither the February nor June 1985 letters constituted an acceleration of the note resulting in the expiration of limitations prior to suit? Second, was it error for the Magistrate Judge to find that the terms of the note had not been modified to an extent that excused the guarantor, Thomas? Third, was it error for the Magistrate Judge not to find the suit barred by the Doctrine of Laches?
 
 A. Acceleration
 
 18
 The parties do not dispute that the applicable statute of limitations is 28 U.S.C. Sec. 2415(a) which requires suits for money damages by the United States to be "filed within six years after the right of action accrues...." Id. Appellants' contention with respect to limitations is that the February 1, 1985 and/or the June, 1985 letter resulted in the acceleration of the note, commencing the running of limitations. As a result, the statute of limitations would have expired prior to the filing of this suit on August 20, 1991.
 
 
 19
 Acceleration clauses are included in promissory notes for the benefit of the creditor. United States v. Feterl, 849 F.2d 354, 357 (8th Cir.1988). As a result, acceleration is seldom found to be implied. Id. Rather,
 
 
 20
 courts usually require that an acceleration be exercised in a manner so clear and unequivocal that it leaves no doubt that the borrower is apprised that the option has been exercised. Id. (citing American Jet Leasing v. Flight Amer., Inc., 537 F.Supp. 745, 748 (W.D.Va.1982).
 
 
 21
 The terms of the note in issue gave Mome the right to elect to accelerate. Thus, there is no issue of whether the default was such that the acceleration occurred by operation of law.[2] In order for there to have been an acceleration, it must have been done, clearly and unequivocally, by one or both of the two letters sent by Clark.
 
 
 22
 The February, 1985 letter to Thomas, the guarantor, merely stated the balance due and requested information regarding other guarantors of the note. Previous communications to Thomas regarding the note set forth the payments missed and the amount to be paid to bring the note up to date. The Appellants attempt to draw a distinction based on this difference, suggesting that the February, 1985 letter was an acceleration because it stated the entire balance due on the note. However, there is neither a request nor a demand for payment contained in the February, 1985 letter, much less a demand for accelerated full payment.
 
 
 23
 The June 25, 1985 letter refers to "the balance due us," and then recites both the outstanding "principal" and "accrued interest to date." Under the terms of the note, the principal would not need to be repaid in its entirety until January, 1986. Thus, in a literal sense, the entire principal could be "due" only if the note had been accelerated. A more sensible view, however, is that there is always an obligation to repay the entire principal and thus it is "due", though not immediately.
 
 
 24
 The June 25, 1985 letter goes on to state "[i]t is my understanding that we will receive $10,000.00 upon receipt of this information and the balance within 30 days." Appellants attach great significance to the juxtaposition of a statement of the principal owed and the request that $10,000.00 would be immediately forthcoming, with the "balance" within 30 days. In order for this letter to possibly be an acceleration, the term "balance" must refer to both the remaining interest and principal.
 
 
 25
 Appellants point to Speight's trial testimony that the understanding reached between Speight and Clark was that the $10,000 was to reduce the principal owed since Speight had, at least according to him, already agreed to pay the interest. The Government, on the other hand, points to Clark's trial testimony that the $10,000.00 was a partial payment of the interest that had accrued. Clark stated at trial that he had never told anyone that the $10,000 was anything but the interest. The "balance" referred to in the letter, according to Clark, was the eight thousand or so in interest that remained after the expected $10,000.00 payment. Clark also testified that his function at the time of the June 25, 1985 letter was to "clean up" the note before the SBA assumed it. Thus, Clark testified, he felt he did not have the authority to demand principal payments.
 
 
 26
 The Magistrate Judge's finding that the "balance" referred to in the June 25, 1985 letter was the balance of past due interest was not clearly erroneous. Indeed, it appears to be more likely than not correct. It can be noted that the June 25, 1985 letter was written in response to a request for information from Speight. In this context, it is not likely that Clark would use the occasion to accelerate the loan. Be that as it may, an acceleration must be "clear and unequivocal," Feterl, 849 F.2d at 357. Here, the trial judge's determination that Mome did not accelerate the loan can hardly be found to be clearly erroneous.
 
 B. Change in Payment Schedule
 
 27
 In 1982, Mome and the purchasers of the restaurants who assumed the note--but not the guarantor Thomas--agreed to a extend the period of interest-only payments for an additional year because of the financial difficulties of the purchasers.[3] Thomas argues that this change in payment schedule relieves him of his obligations as a guarantor of the note.
 
 
 28
 In United States v. Rollinson, 629 F.Supp. 581 (D.D.C.1986), aff'd, 866 F.2d 1463 (D.C.Cir.), cert. denied, 493 U.S. 817 (1989), the court was faced with a situation similar to that presented here. In Rollinson, a SBA loan had been made by a bank to a corporation with personal guarantees executed by individuals. The loan was almost immediately in arrears and seven deferrals in the payment schedule were made. Id. at 584. The district court noted that "alterations in the underlying contract between a principal debtor and a creditor discharge the guarantor." Id. However, the extensions and deferrals of payment schedule did not rise to the level of "alteration" and therefore the guarantor was not discharged. Id. at 584-85. As was the case with the note in Rollinson, the terms of the note Thomas guaranteed have not been fundamentally altered.
 
 
 29
 In addition to the fact that the change in payment schedule was not a fundamental alteration, the guarantee agreement provided that:
 
 
 30
 [e]ach ... guarantor of this note does hereby, jointly and severally, waive presentation of payment, notice of nonpayment, protest, and notice of protest, and does hereby agree to all extensions and renewals of this note, if any, without notice.
 
 
 31
 This agreement to extensions of the note obviates any argument that the change in payment schedule discharges Thomas's obligations. The D.C. Circuit decision in Rollinson made clear that such a waiver is dispositive of any claim that the guarantor must be relieved of his obligations due to a change in terms. 866 F.2d at 1472. A guarantor who has agreed to any and all extensions, cannot later claim he has been discharged by an event he expressly consented to. Id. We agree with the trial judge in finding that the change in payment schedule did not discharge Thomas's obligations as a guarantor of the note.
 
 C. Laches
 
 32
 The Appellants asserted the Doctrine of Laches as a defense in this case. The trial judge rejected this defense on two grounds. First, that the Doctrine of Laches is an equitable defense unavailable where the plaintiff is not seeking equitable relief.[4] Second, that the Doctrine of Laches is never available as a defense against the United States.
 
 
 33
 We need not reach the question of whether the trial judge's basis for decision was correct. In this case, even assuming the Doctrine of Laches could be applied against the Government in a case like this one, it should not be applied in this particular case.
 
 
 34
 In order to successfully assert the Doctrine of Laches, the Defendant must prove (1) lack of diligence by the Plaintiff and (2) prejudice to the Defendant. White v. Daniel, 909 F.2d 99, 102 (4th Cir.1990). Here, the only detriment suffered by the Appellants by virtue of the Government's delay in bringing suit was the accrual of interest on the debt. Although the interest rate was a high one, the Government's forbearance effectively permitted the Appellants to have the use of their money during a high interest rate period. In any event, the mere fact that interest continued to accrue on a valid debt and that collateral was not foreclosed upon does not present the prejudice necessary for the Doctrine of Laches to apply (if it is even possible for it to apply) for the benefit of the Appellants here.
 
 III.
 
 35
 For the foregoing reasons, the judgment of the trial court is
 
 
 36
 AFFIRMED.
 
 
 
 [1]
 On appeal, the Appellants have not contended this action relieved their liability on the note
 
 
 [2]
 Such a contention would undoubtedly fail. See Feterl, 849 F.2d at 356; United States v. Gilmore, 698 F.2d 1095, 1097 (10th Cir.1983); United States v. Alssi, 599 F.2d 513, 515 (2d Cir.1979)
 
 
 [3]
 This change lowered the monthly payment from $2808.48 to $1614.58 for the period
 
 
 [4]
 It must be noted that this case was brought within the applicable statute of limitations