856 F.2d 112
 FEDERAL DEPOSIT INSURANCE CORPORATION, Plaintiff-Appellant,
v.
Jack GALLOWAY, Jack Galloway d/b/a Jack's Excavating a/k/a
Jack's Excavating Co., Defendants,
John W. Meyers, Jr., Lorna M. Meyers, Harry D. Sharp and
Brenda C.M. Sharp, Defendants-Appellees.
 No. 85-2699.
 United States Court of Appeals,
Tenth Circuit.
 Sept. 7, 1988.
 
 Robert W. Pass of Carlton, Fields, Ward, Emmanuel, Smith & Cutler, Tampa, Florida (Lawrence F. Bates, Office of the General Counsel, Federal Deposit Ins. Corp., Washington, D.C., with him, on the briefs), for plaintiff-appellant.
 Ernest C. Ballweg (Bruce E. Moore with him, on the brief), of Cooke, Ballweg, Tuley & Moore, Leawood, Kan., for defendants-appellees.
 Before LOGAN and BALDOCK, Circuit Judges, and PHILLIPS, District Judge.*
 LOGAN, Circuit Judge.
 
 
 1
 In this action, plaintiff Federal Deposit Insurance Corporation (FDIC), in its corporate capacity as the purchaser of certain assets of the Mission State Bank & Trust Company (the Bank), seeks to recover from the guarantors of certain promissory notes made out to the Bank as payee. The district court held that the guarantors were not liable on the notes, and the FDIC appeals.
 
 
 2
 The facts are undisputed. Between October 25, 1977, and March 21, 1979, Jack Galloway, president of Jack's Excavating Co. (the Company), signed seven promissory notes[1] as loans from the Bank for a total of $890,599.51 plus interest. The loan proceeds were used primarily to purchase equipment for the Company. Galloway used most of the proceeds from the first of these notes, Plaintiff's Exhibit 13, to purchase equipment from Johnson County Equipment Company (JCEC). Before the Bank loaned Galloway these proceeds, Bank president Theodore Meyer asked defendant John W. Meyers, Jr., a stockholder in JCEC, to sign an unconditional guaranty for $63,000 of Galloway's debt. Executed and delivered on October 20, 1977, the guaranty agreement provided in relevant part as follows:
 
 
 3
 "The undersigned ... does hereby absolutely and unconditionally guarantee to said Bank, its successor, successors or assigns, payment at maturity of any and all existing and future indebtedness and liability of every kind, nature and character of $63000.00 (Plus all legal interest charges made by said Bank) either made or endorsed by Jack Galloway ... to the Bank, howsoever and whensoever created, or arising, or evidenced, or acquired....
 
 
 4
 This guaranty is made and shall continue as to any and all such indebtedness and liability of the borrower to the bank incurred or arising prior to receipt by the bank of written notice of the termination hereof from the undersigned.
 
 
 5
 This guaranty shall bind the heirs, personal representatives, successors [and] assigns of the undersigned and shall inure to the Bank, its successors and assigns."
 
 
 6
 FDIC v. Galloway, 613 F.Supp. 1392, 1396 (D.Kan.1985).
 
 
 7
 On March 20, 1979, Meyers and defendant Harry D. Sharp, who were then stockholders in Kan-Tuck Equipment Company, each executed guaranties for $531,000 of Galloway's debt to the Bank so that the Company could purchase equipment from Kan-Tuck Equipment and JCEC. These guaranties were identical in all respects to Meyers' October 20, 1977, guaranty except for the dates, the amounts, and the signatures appearing thereon. Galloway, 613 F.Supp. at 1396. Meyers and his wife signed one guaranty; Sharp and his wife signed the other.
 
 
 8
 Before signing these guaranties, Sharp and Meyers asked the Bank's president, Meyer, if Galloway was a good credit risk. The bank president orally assured Sharp and Meyers that the first note Meyers guaranteed had been paid and that the bank would establish a $50,000 escrow account to help cover the first payments on the new note. In fact, however, the bank president knew that Galloway had not paid off the earlier note; further, he did not intend to establish such an escrow account for the new note. Galloway, 613 F.Supp. at 1396.
 
 
 9
 On August 8, 1980, the FDIC was appointed as receiver of the Bank, and received court authorization to sell to itself as a corporate entity all of the Bank's assets not acquired by the successor bank. On March 25, 1981, the FDIC in its corporate capacity acquired these assets, including the notes and guaranties at issue in this case. On March 9, 1984, the FDIC brought this action against Galloway and the Company, and against Meyers and Sharp as guarantors.
 
 
 10
 After a bench trial, the district court found by "clear and convincing" evidence that the bank president's misrepresentations in 1979 were made with the intent to deceive Sharp and Meyers by understating the risk of guaranteeing Galloway's debt. Id. at 1397. Consequently, the court held that these misrepresentations constituted fraud in the inducement, which "unless otherwise barred as a legal defense ... would relieve these defendants of liability on their guaranty agreements." Id. at 1399-1400. In determining whether Sharp and Meyers could rely on fraud in the inducement as a defense, the court distinguished between the statement of intention to open an escrow account and the statement that the 1977 note had been retired. The court held that the bank president's statement of intention to open the $50,000 escrow account constituted an agreement between the Bank and these defendants and, as such, was barred as a defense against the FDIC by 12 U.S.C. Sec. 1823(e) and federal common law; it held, however, that the misrepresentation about Galloway paying off the 1977 note constituted fraud in the inducement not based on an agreement, and was a defense available against the FDIC. Galloway, 613 F.Supp. at 1403. The district court also held that the FDIC could not recover from Meyers on the 1977 guaranty because the statute of limitations on this guaranty had run before the FDIC brought the instant action. The FDIC appeals the district court's denial of recovery on both guaranties.
 
 
 11
 * We address first the district court's holding that the 1979 guaranties by Meyers and Sharp can be avoided because of fraud in the inducement. The FDIC does not dispute the finding of fraud in the inducement but argues instead that 12 U.S.C. Sec. 1823(e) prevents these defendants from raising such fraud as a defense against the FDIC in its capacity as assignee of the Bank's assets. Section 1823(e) provides in relevant part as follows:
 
 
 12
 "No agreement which tends to diminish or defeat the right, title or interest of the [FDIC] in any asset acquired by it under this section, either as security for a loan or by purchase, shall be valid against the [FDIC] unless such agreement (1) shall be in writing, (2) shall have been executed by the bank and the person or persons claiming an adverse interest thereunder, including the obligor, contemporaneously with the acquisition of the asset by the bank, (3) shall have been approved by the board of directors of the bank or its loan committee, which approval shall be reflected in the minutes of said board or committee, and (4) shall have been, continuously, from the time of its execution, an official record of the bank."
 
 
 13
 The district court found that the representations made by the president of the Bank were not made in writing, were not approved by the board of directors or its loan committee, and were not kept as an official record of the bank. But because the court thought one of the acts of misrepresentation--Meyer's false statement that Galloway had paid off the October 1977 note--was not an "agreement," it held that Sec. 1823(e) did not apply.
 
 
 14
 As the FDIC points out, a Supreme Court case decided after entry of the district court's judgment, Langley v. FDIC, --- U.S. ----, 108 S.Ct. 396, 98 L.Ed.2d 340 (1987), rejects the district court's construction of the term "agreement" as contemplated by Sec. 1823(e). In Langley, the makers of a promissory note alleged that the payee procured their agreement to pay through factual misrepresentations. Id. 108 S.Ct. at 400. The Court unanimously rejected the makers' argument that the word "agreement" encompasses only an express promise to perform an act in the future; the Court held that "agreement" also includes conditions imposed upon the obligation to repay and representations or warranties made by the payee bank as part of the loan transaction. Id. 108 S.Ct. at 401-02. Specifically, the Court held that "one who signs a facially unqualified note subject to an unwritten and unrecorded condition upon its repayment has lent himself to a scheme or arrangement that is likely to mislead the banking authorities, whether the condition consists of performance of a counterpromise ... or of the truthfulness of a warranted fact." Id. 108 S.Ct. at 402 (emphasis added).
 
 
 15
 Meyers and Sharp argue that Sec. 1823(e) should not apply to fraudulent misrepresentations of which the FDIC was aware when it acquired the note. The Langley Court also specifically rejected this argument, holding that neither the guarantors' assertion of fraud in the inducement as a defense nor the FDIC's knowledge of the misrepresentation when it acquired the note prevented the application of Sec. 1823(e). Id.
 
 
 16
 Although Langley involved liability of the makers of a promissory note its reasoning surely applies to guarantors, and directly controls the instant case. The Court explained that one of the purposes underlying Sec. 1823(e) is to allow the FDIC to rely on a bank's records in assessing its financial condition. Id. 108 S.Ct. at 401. The reliability of this assessment, according to the Court, necessarily depends on protecting the FDIC from undisclosed conditions to facially unqualified notes. Id. Likewise, because the FDIC relies on the existence and strength of guaranties in assessing the financial condition of a bank, it also must be protected from undisclosed conditions to seemingly unqualified guaranties. Although the Court stated that Sec. 1823(e) would not prevent the real defense of fraud in the factum, "that is, the sort of fraud that procures a party's signature to an instrument without knowledge of its true nature or contents," id. 108 S.Ct. at 402, no such defense was presented here. Consequently, we hold that Sec. 1823(e) allows the FDIC to enforce the 1979 guaranties against Meyers and Sharp and their wives, and we reverse the district court's judgment to the contrary.
 
 II
 
 17
 The FDIC also asks us to reverse the district court's judgment that the FDIC could not recover on Meyers' October 1977 guaranty. The district court held that the action on the guaranty was barred by the five-year Kansas statute of limitations on contract actions, Kan.Stat.Ann. Sec. 60-511(1). Specifically, the court held that the statute of limitations on the guaranty agreement began to run on January 23, 1978, the original maturity date of Galloway's first note, Plaintiff's Exhibit 13, and that "Galloway's partial payments on the note did not toll the statute of limitations as to this guaranty agreement." 613 F.Supp. at 1399 (emphasis in original).
 
 
 18
 Soon after the district court entered its judgment, this circuit decided FDIC v. Petersen, 770 F.2d 141 (10th Cir.1985), which also involved an action by the FDIC in its corporate capacity to recover from guarantors. The court in Petersen held that the six-year federal statute of limitations in 28 U.S.C. Sec. 2415(a) applies to suits like this one, brought by the FDIC in its corporate capacity against guarantors of promissory notes.[2] It also held, contrary to the position of at least one other circuit,[3] that the FDIC's cause of action to enforce a guaranty accrues, and thus the six-year statute of limitation begins to run, on the date the underlying note matures. 770 F.2d at 142-43. If the 1977 guaranty applies only to the first note, which matured in January 1978, the FDIC's suit, commenced in March 1984, was untimely under the rule in Petersen.
 
 
 19
 The 1977 guaranty on its face was a continuing guaranty; it expressly covered "all existing and future indebtedness and liability of every kind" made by Galloway to the Bank, and continued until notice of termination by Meyers. See supra at 113. Meyers makes an argument on this guaranty similar to that accepted by the district court on the 1979 guaranty: that because the Bank did not tell him about a prior note Galloway had executed, Meyers' liability should be limited to no more than Galloway's obligation on the one note issued at the time Meyers signed the guaranty. But under Langley 's broad construction of the term "agreement" in 12 U.S.C. Sec. 1823(e), that section protects the FDIC from being bound by any side agreements, understandings or representations limiting the scope of a continuing guaranty unless they have been put in writing and kept as official bank records. See FDIC v. Cardinal Oil Well Servicing Co., 837 F.2d 1369, 1371-72 (5th Cir.1988); FDIC v. Waldron, 630 F.2d 239, 241 (4th Cir.1980). We cannot ignore the plain words of the guaranty and the import of the Langley decision. Thus, we hold that the guaranty was a continuing one covering all seven of Galloway's notes and the district court erred in holding that the statute of limitations as to the "entire" $63,000 guaranty agreement began to run as of the original maturity date of January 23, 1978. See Galloway, 613 F.Supp. at 1399.
 
 
 20
 The FDIC's rights against Meyers devolve from the underlying notes he guaranteed. That is, the FDIC can sue Meyers separately on each note he guaranteed; the FDIC's total recovery from Meyers, however, is limited to the $63,000 amount of the guaranty agreement less any payments he has already made under it. Applying the Petersen rule that the FDIC's rights on a guaranty accrue when the underlying debt matures to the situation before us in which there is a continuing guaranty of several debts, we hold that a new cause of action on such a guaranty accrues as each underlying debt becomes due. As the court held in Union Planters National Bank of Memphis v. Markowitz, 468 F.Supp. 529, 532 (W.D.Tenn.1979),
 
 
 21
 "it is important to point out that the statute of limitations does not apply to the guaranty agreement itself. By its terms, the guaranty was 'continuing, absolute and unconditional' until terminated in writing by the guarantors and until all prior debts were fully paid. Furthermore, the mere existence of the guaranty does not give rise to a cause of action, but rather a cause of action against the guarantors accrues only as each obligation of the principal debtor becomes due. Thus the statute of limitations applies independently to each obligation that is guaranteed, and the six-year limitations period runs on each cause of action separately."
 
 
 22
 See also FDIC v. Consolidated Mortgage & Finance Corp., 805 F.2d 14, 22 (1st Cir.1986) (in suit brought on continuing guaranty, remand necessary to determine when statute of limitations had run for each particular underlying obligation).
 
 
 23
 The FDIC filed this action on March 9, 1984. Thus, this action is timely only as to those notes that matured on or after March 9, 1978. Because two of the notes Meyers guaranteed, Plaintiff's Exhibits 10 and 13, matured before this date, the FDIC's right to recover on them is barred by the statute of limitations; an action on the other five is not time-barred.[4]
 
 
 24
 We reject the FDIC's argument that the district court should have allowed Galloway's post-maturity payments on the first two notes, Plaintiff's Exhibits 10 and 13, to toll the limitations period on those notes. The FDIC's argument is foreclosed by Petersen, which also involved a continuing guaranty. In Petersen, the panel majority rejected the argument set forth in Judge Timbers' dissent that the principal's post-maturity acknowledgement of a debt created a new and separate obligation, which the continuing guaranty also would cover. The majority held as follows:
 
 
 25
 "FDIC argues that the guaranties permitted the extension or renewal of the note and Meridian's acknowledgement of the debt constituted such a renewal to which the guarantors gave prior consent by signing the guaranties. The district court characterized the argument as 'sophistry.' We agree.... Acknowledgement or part payment of the debt does not constitute a new agreement. It only suspends the running of the statute of limitations against the party making such acknowledgement or partial payment."
 
 
 26
 Petersen, 770 F.2d at 143 (citation omitted). Following Petersen, as this panel must, we also cannot hold that the Bank's extensions of the maturity dates of Plaintiff's Exhibits 10 and 13, in return for Galloway's partial payments, transformed those notes into new and separate debts so as to suspend the running of 28 U.S.C. Sec. 2415(a). Adopting the FDIC's position would deprive guarantors of meaningful protection from statutes of limitation.
 
 
 27
 Further, we see nothing in this guaranty agreement suggesting that Galloway's partial payments after maturity would affect the FDIC's right to sue Meyers on the guaranty. The guaranty agreement states that Meyers guaranteed "payment at maturity" and waived any right to require the Bank to sue Galloway on the debt before proceeding against Meyers. Galloway, 613 F.Supp. at 1396. Thus, under the express terms of the agreement, the holder's right to enforce the guaranty accrued when the note matured.
 
 
 28
 REVERSED and REMANDED for additional proceedings consistent with this opinion.
 
 
 
 *
 The Honorable Layn R. Phillips, United States District Judge for the Western District of Oklahoma, sitting by designation
 
 
 [1]
 In this opinion, we refer to these promissory notes by the exhibit numbers designated at trial. For the dates of execution, the initial maturity dates, and the principal amounts of these notes, see FDIC v. Galloway, 613 F.Supp. 1392, 1394-95 (D.Kan.1985)
 
 
 [2]
 We were not faced in Petersen with a situation where the state statute of limitations had run before the FDIC acquired the obligations. Nor are we faced with such a situation here. The FDIC became the receiver in August 1980 and acquired the note and guaranties on March 25, 1981, within the five-year limitation of Kansas law measured from the January 23, 1978, maturity date of the first note. See Guaranty Trust Co. v. United States, 304 U.S. 126, 142, 58 S.Ct. 785, 793, 82 L.Ed. 1224 (1938) (claim expired under state law not revived by transfer to the United States)
 
 
 [3]
 The Third Circuit recently rejected our approach in Petersen and held that the FDIC's right of action under Sec. 2415(a) accrues, and the six years begins to run, when the FDIC acquires the cause of action. FDIC v. Hinkson, 848 F.2d 432, 435 (3d Cir.1988). See also FDIC v. Cardona, 723 F.2d 132, 134 (1st Cir.1983) (suggesting, in dictum, that limitations period under Sec. 2415(a) begins to run when the FDIC acquires action)
 
 
 [4]
 Plaintiff's Exhibit 16 matured April 1, 1982; Plaintiff's Exhibit 20 matured May 13, 1979; Plaintiff's Exhibit 23 matured May 11, 1979; Plaintiff's Exhibit 26 matured October 4, 1978; and Plaintiff's Exhibit 29 matured April 16, 1978. See Galloway, 613 F.Supp. at 1395