FEDERAL DEPOSIT INSURANCE CORPORATION, in its corporate capacity, Plaintiff,

v.

Richard PAUL, et al., Defendants.

Civ. No. 89–C–0065–S.

United States District Court, D. Utah, C.D.

March 6, 1990.

Jathan W. Janove, Fabian & Clendenin, Salt Lake City, Utah, Bruce J. Pederson, Rita W. Ross, Washington, D.C., Denis F. Shanagher, Donald P. Rubenstein, Bronson & McKinnon, San Francisco, Cal., for plaintiff.

John M. Wunderli, Ray G. Martineau, Gary R. Howe, Callister, Duncan & Nebeker, Edward M. Garrett, Garrett & Sturdy, James L. Christensen, Corbridge, Baird & Christensen, Mary A. Wood, John B. Wilson, Parsons, Behle & Latimer, Richard S. Nemelka, Neil A. Kaplan, Clyde & Pratt, Thomas J. Klc, Salt Lake City, Utah, for defendants.

## MEMORANDUM DECISION

SAM, District Judge.

This action is before the court on the motion of plaintiff Federal Deposit Insurance Corporation (FDIC) for partial summary judgment and to strike, the motions of defendants Edward Burton and Graham Doxey for summary judgment, and the motion of defendant Robert Rice to dismiss. The remaining defendants join on Doxey's motion for summary judgment.

The FDIC sues former Utah Firstbank (UFB) officers and directors (collectively "the directors"), alleging negligence; breach of fiduciary duties; and breach of contract for their mismanagement of UFB assets, particularly its loan portfolio. The relevant federal statute of limitations bars claims not brought within three years from the date the right of action accrues. This action was commenced three years less one day from the date UFB closed and the FDIC acquired the claims. The directors seek dismissal or summary judgment on their affirmative defense that the action is time-barred under the Utah and federal statutes of limitations. The FDIC moves to strike the affirmative defense and seeks partial summary judgment that the claims were alive under Utah law when the FDIC acquired them and that the action was timely commenced under federal law. Issues central to the present motions are (1) whether, under the doctrine of adverse domination or Utah statute, the claims were alive when the FDIC acquired them, and (2) whether the federal statute of limitations began to run on the date the FDIC acquired the claims or on various earlier dates. After hearing oral argument and reviewing relevant law, the court concludes that both the state and federal statutes of limitations were tolled until the FDIC acquired the claims.[1] Therefore this action was timely commenced, and the directors' affirmative defense is stricken.

### I. *Facts*

From September 14, 1978 to January 24, 1986, UFB was a Salt Lake City, Utah banking corporation with deposits insured under the Federal Deposit Insurance Act. Defendant Richard Paul served, from August 17, 1978 to April 25, 1985, as chairman of the UFB Board of Directors and as a member of the Directors Loan Committee. At various times during this period, Paul acted as chairman of the UFB Loan Committee and as a member of the Asset/Liability Management and Steering Committees. He was also president and CEO of the First Bancorporation (FBC), UFB's holding company, and president of the Foothill Thrift and FTL Leasing, both subsidiaries of FBC. Defendant Harold Turley served, from April 17, 1978 to May 22, 1985, as UFB's president and CEO and as a member of the UFB Board of Directors. The remaining defendants were members of the UFB Board of Directors and held positions on the UFB loan committees; some also acted as directors for FBC and Foothill Thrift.

Soon after UFB was formed, bank examiners began warning its directors of liquidity problems resulting from their lack of supervision over the loan portfolio which showed numerous delinquencies and documentation exceptions, as well as loans allegedly made in violation of state and federal laws. The directors were also criticized for not controlling discretionary expenses. Continual decline in asset quality prompted the Federal Reserve Board to issue a cease and desist order in 1983 which required the directors to improve UFB's loan portfolio. But despite its owning over $50 million in total assets, UFB experienced a net loss of $1.4 million in 1984. The Utah Department of Financial Institutions then imposed on UFB another cease and desist order which found UFB was conducting its business in an unauthorized and unsafe manner that injured its depositors and the public. The order included specific findings that UFB was operating with (1) unsafe lending and collection practices, (2) a disproportionately large vol-

---

**1.** The parties argue whether the FDIC's claims sound in contract or tort and whether a three- or four-year Utah statute of limitations should apply. The court's decision obviates discussion of these issues.

ume of poor quality loans, (3) an inordinately large volume of volatile liabilities without sufficient liquidity to meet its obligations, (4) inadequate capital, (5) management whose policies were detrimental to the bank, and (6) a board of directors that had failed to provide adequate direction for active management of the bank. The order also found UFB was expending amounts inconsistent with safe and sound banking practices with respect to senior executive compensation, entertainment and travel, and fees paid to FBC. By the end of 1985, UFB losses exceeded $5 million.

In the spring of 1985, Paul and Turley were forced to resign their UFB positions. Except for defendants Robert Busch, Blaine Hale and Robert Rice,[2] the remaining defendants continued in their positions until, on January 24, 1986, the Commissioner of Financial Institutions for the State of Utah ordered UFB closed. The same day the FDIC was appointed UFB's receiver and took possession and control of UFB's assets, property and affairs, which were then assigned to the FDIC in its corporate capacity. Among the assets were the instant claims against the officers, directors and employees for the non-performance or manner of performance of their duties. The FDIC commenced this action on January 23, 1989.

The court will first discuss the motions for summary judgment then Rice's motion to dismiss.

## II. *The Summary judgment motions*

Under Fed.R.Civ.P. 56, summary judgment is proper only when the pleadings, affidavits, depositions or admissions establish there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law. The burden of establishing the nonexistence of a genuine issue of material fact is on the moving party. *E.g., Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Whether a fact is material is determined by looking to

relevant substantive law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The substantive law governing this case requires consideration of only the undisputed facts.

It is established law that the FDIC may proceed only on claims alive under state law when the FDIC receives them. *See Guaranty Trust Co. v. United States,* 304 U.S. 126, 58 S.Ct. 785, 82 L.Ed. 1224 (1938) (claim expired under state statute not revived by transfer to federal agency). Therefore the court is presented with a two-step analysis: first, whether the instant claims were time-barred under Utah law when the FDIC received them; and, second, whether the claims are time-barred under § 2415(b). *See, e.g., FDIC v. Hudson,* 673 F.Supp. 1039 (D.Kan.1987).

### A. The viability of the claims under Utah law

■ The "adverse domination" doctrine tolls statutes of limitations until the allegedly culpable directors no longer control or dominate the bank. *FDIC v. Bird,* 516 F.Supp. 647, 651 (D.P.R.1981) (fact-similar to this case). The pith of adverse domination is that shareholders have no realistic opportunity to bring suit against the directors because the directors' control of the bank could result in concealment or nondisclosure of the grounds for a cause of action. *Bird* best expresses the necessity for the doctrine:

> Is it logical to assume that the directors, in whom the bank had entrusted the discretion to sue, would authorize the initiation of an action against themselves for their own improprieties? To permit bank directors who control and dominate the affairs of a bank to benefit from their own inaction by finding that, as a matter of law, limitations run from the moment of their commission of improprieties, is a result which justice could not tolerate.

*Id. Bird*'s response to the query is that "in no meaningful sense" could claims

---

**2.** Busch resigned from UFB on February 21, 1985; Hale on September 1, 1985; and Rice on

August 16, 1984.

against bank directors be sued upon before the bank fails and a receiver is appointed. *Id.* That reasoning is widely accepted; and, to this court's knowledge, adverse domination principles have been considered expressly or implicitly in every reported decision related to actions against directors of failed banks. *See infra* note 7 and cases cited *infra* pp. 379–80.

■ Utah codified the adverse domination doctrine in Utah Code Ann. § 7–2–23, effective May 1, 1989, which provides in relevant part:

> (2) No statute of limitations as to any cause of action against an officer or director of a depository institution begins to run as to the commissioner or any receiver or liquidator appointed under Section 7–2–9 until the date the commissioner takes possession of the institution under this chapter. . . .

Because § 7–2–23 was enacted nearly three months after this action was commenced, the court must determine if the statute should apply to these claims. "Whether legislation affects litigation pending when the legislation becomes effective depends on whether the legislation is substantive or procedural." *Docutel Olivetti Corp. v. Dick Brady Systems, Inc.,* 731 P.2d 475, 478 (Utah 1986); *see also Stephens v. Henderson,* 741 P.2d 952, 953–54 (Utah 1987). " 'Procedural statutes enacted subsequent to the initiation of a suit which do not enlarge, eliminate or destroy vested or contractual rights apply not only to future actions, but also to *accrued and pending actions as well.*' " *Docutel,* 731 P.2d at 478 (emphasis added) (quoting *State Department of Social Services v. Higgs,* 656 P.2d 998 (Utah 1982)); *see also Petty v. Clark,* 113 Utah 205, 192 P.2d 589 (1948); *Boucofski v. Jacobsen,* 36 Utah 165, 104 P. 117 (1909); 82 C.J.S., *Statutes,* § 416 (1953). The question then is whether § 7–2–23 is substantive or procedural law.

In *FDIC v. Petersen,* 770 F.2d 141, 142 (10th Cir.1985), the court stated the settled rule that statutes of limitation are general-

ly considered procedural rather than substantive law. *See also Kalmich v. Bruno,* 553 F.2d 549, 553 (7th Cir.), *cert. denied,* 434 U.S. 940, 98 S.Ct. 432, 54 L.Ed.2d 300 (1977); *Bournias v. Atlantic Maritime Co.,* 220 F.2d 152, 154–55 (2nd Cir.1955); *see Stokke v. Southern Pacific Co.,* 169 F.2d 42, 43 (10th Cir.1948). The rationale is that "new procedural rules do not affect proceedings completed prior to enactment." *Higgs,* 656 P.2d at 1000–01; *Drainage District No. 7 of Washington County v. Bernards,* 89 Or. 531, 174 P. 1167 (1918). Further proceedings in a case pending at the time of enactment are governed by the new procedural rule. *Higgs,* 656 P.2d at 1000–01.

The court concludes as a matter of law that § 7–2–23 serves as a statute of limitations; therefore the section tolls the present claims because they were pending when it was enacted. The claims would also be tolled under federal statutory law, 28 U.S.C. § 2416, and federal case authority discussed *infra* section II.B.[3] *Cf. Esplin v. Hirschi,* 402 F.2d 94, 103 (10th Cir. 1968) (federal law tolls state statutes applied under securities laws), *cert. denied,* 394 U.S. 928, 89 S.Ct. 1194, 22 L.Ed.2d 459 (1969).

### B. *Accrual under the federal statute of limitations*

■ 28 U.S.C. § 2415(b) requires a government agency to bring any tort claim within three years "after the right of action first accrues." Section 2416(c) tolls the statute for any period during which "facts material to the right of action are not known and reasonably could not be known by an official of the United States charged with the responsibility to act in the circumstances. . . ." "[The] FDIC is an agency of the United States when acting in its corporate capacity and § 2415 . . . governs an action brought by [the] FDIC to enforce an assigned claim for money."

---

**3.** In light of its ruling regarding § 7–2–23, the court will not reach the question whether or for what period the directors adversely dominated UFB. This case illustrates the economy of § 7–2–23, in that the section avoids turning what should be a fairly simple procedural question into a factual ball of yarn.

*FDIC v. Petersen,* 770 F.2d at 143 (citing *Bird,* 516 F.Supp. at 649–50).

The directors assert that the right of action accrued as early as 1980 when UFB received the first warnings from regulatory agencies and no later than each of the dates on which the imprudent loans were made. As support for their assertion the right of action accrued when the loans were made, the directors cite the Colorado District Court's holding in *FDIC v. Petersen,* 565 F.Supp. 1007, 1010 (D.Colo.1983), *aff'd on other grounds,* 770 F.2d 141 (10th Cir.1985),[4] and the Tenth Circuit's holding in *FDIC v. Galloway,* 856 F.2d 112 (10th Cir.1988). In both cases, the FDIC sued guarantors of promissory notes. *Petersen* follows the rule in *United States v. Cardinal,* 452 F.Supp. 542, 544–47 (D.Vt.1978) (suit on promissory note), that the right of action in a derivative suit accrues "when the claim first becomes actionable, regardless of whether the government has acquired the claim at that time." *Petersen,* 565 F.Supp. at 1010. *Galloway* holds that the "FDIC's right of action *to enforce a guaranty* accrues, and thus the ... statute of limitation begins to run, on the date the underlying note matures." *Id.* at 115–16 (emphasis added). The policy behind these holdings is set out in *Cardinal:* "[T]he statute is 'aimed at equalizing the litigation opportunities between the Government and private parties.'" 452 F.Supp. at 545

(quoting *Crown Coat Front Co. v. United States,* 386 U.S. 503, 521, 87 S.Ct. 1177, 1187, 18 L.Ed.2d 256 (1967)).

The court considers these authorities inapposite to the present case because they neither recognize concealment of evidence nor discuss § 2415 "in the context of FDIC receivership of failed banks."[5] *FDIC v. Carlson,* 698 F.Supp. 178, 180 (D.Minn. 1988) (rejecting defendants' authorities unrelated to FDIC action against directors of failed banks). The date on which a right of action accrues is fairly simple to pinpoint when, as in *Galloway,* 856 F.2d at 117, "express terms of an agreement" give a maturity date after which the bank may sue on the note. In that scenario, where the date is certain and the bank has both the incentive and knowledge necessary to sue a debtor, there are legitimate concerns about the legal reality (referring to stale claims) and the fairness of subjecting the debtor to threat of suit for up to nine or ten years after default.[6] But certainty, incentive and knowledge are absent when the bank is injured by its own directors who have the power to conceal evidence of their misconduct. Consequently, for the majority of courts, application of adverse domination principles to claims against directors of failed banks compels the conclusion that § 2415 periods do not run until the FDIC acquires the claims.[7] *See Metro. Bank,* 884 F.2d 1304; *FDIC v. Robertson,*

---

**4.** The FDIC did not appeal the district court's holding concerning accrual.

**5.** *Galloway* expressly rejects authority holding the FDIC's right of action accrues when it acquires the claim, 856 F.2d at 115–16 n. 3; however, both repudiated cases relate to claims against individual debtors, not bank officers: *FDIC v. Hinkson,* 848 F.2d 432 (3rd Cir.1988) (guaranty) and *FDIC v. Cardona,* 723 F.2d 132 (1st Cir.1983) (promissory note).

**6.** Claims remain alive under the Utah statutes of limitations either three or four years, and § 2415(a) allows the government six years in which to bring contract claims.

**7.** The directors cite *FDIC v. Greenwood,* 701 F.Supp. 691, 694 (C.D.Ill.1988), in support of the proposition that the FDIC's negligence claims against directors of a closed bank accrue when they first could have been sued upon by a plaintiff, whether or not the FDIC has acquired the

bank at that time. However, *Greenwood* expressly did not reach the tolling issue because the parties did not request summary judgment on it. *Id.* On rehearing, the *Greenwood* court applied the adverse domination doctrine and tolled the claims until the date the FDIC was appointed receiver. *Greenwood,* No. 87–3266 (C.D.Ill. March 2, 1989).

In their memorandum, the directors rely heavily (for the accrual when loans made theory) on the district court's decision in *FDIC v. Former Officers & Directors of Metro. Bank,* 705 F.Supp. 505 (D.Or.1987) (cause of action accrued when imprudent loans made), *rev'd,* 884 F.2d 1304 (9th Cir.1989) (statutory ambiguity should be resolved in government's favor by tolling claims until FDIC acquires them). By the time of oral argument on the present motions, both *Greenwood* and *Metropolitan* had been reversed. Consequently, there is no reported case law to support the directors' position that the FDIC's right of action accrued when the imprudent loans were made.

No. 87–2623–S, slip op., 1989 WL 94833 (D.Kan. July 24, 1989); *FDIC v. Manatt*, 723 F.Supp. 99 (E.D.Ark.1989); *FDIC v. Carlson*, 698 F.Supp. 178 (D.Minn.1988); *Hudson*, 673 F.Supp. 1039; *FDIC v. Berry*, 659 F.Supp. 1475 (E.D.Tenn.1987); *FDIC v. Dempster*, 637 F.Supp. 362 (E.D.Tenn. 1986); *FDIC v. Buttram*, 590 F.Supp. 251 (N.D.Ala.1984) (FDIC lacked authority to sue until it acquired claims); *FSLIC v. Williams*, 599 F.Supp. 1184 (D.Md.1984); *FDIC v. Bird*, 516 F.Supp. 647; *FDIC v. Oakes*, No. 89–2261–S, 1989 WL 151954 (D.Kan. November 1, 1989); *FDIC v. Farris*, No. Civ–88–2289–A (W.D.Okla. October 17, 1989); *FDIC v. Brown*, 737 F.Supp. 626 (D.Utah 1989).[8]

Absent controlling authority to the contrary, this court follows the modern trend in this and other jurisdictions by concluding, as a matter of law, the FDIC's right of action against the directors accrued when the FDIC acquired the claims on January 24, 1986, and therefore this action was timely filed under § 2415(b). The holding comports with § 2416(c) by tolling § 2415(b) for any period during which material facts could not have been available to the FDIC, the government agency responsible for bringing suit.[9] Moreover, it promotes uniformity in filing actions against directors of failed banks and provides the FDIC the time and information it needs to investigate its assigned claims. The court agrees with *Farris* that the adverse domination doctrine is "reasonable and necessary for the protection of shareholders, creditors and depositors of financial institution[s]." *Farris*, No. Civ–88–2289–A at 2.

The court is not moved from its decision by the directors' argument that the FDIC had sufficient knowledge to sue earlier. Where the FDIC had no duty to discover the directors' alleged wrongdoing, *see Bird*, 516 F.Supp. at 652, or to attempt to remedy UFB's problems, *see Dempster*, 637 F.Supp. at 367, it had no duty to take action before UFB was closed.[10] Indeed case law recognizes that the FDIC lacked legal ability or standing to bring the action before it was appointed receiver. *See, e.g., Hudson*, 673 F.Supp. at 1043.

The directors' affirmative defense related to the timeliness of action is stricken.

### III. *Rice's motion to dismiss*

■ The standards governing a Fed.R. Civ.P. 12(b)(6) motion are succinctly stated in 2A J. Moore, *Moore's Federal Practice* par. 12.07 (2d ed. Supp.1987):

A motion to dismiss for failure to state a claim upon which relief can be granted ... [is a] dismissal ... on the merits and is accorded res judicata effect. For this reason, dismissal under subdivision b(6) [sic] is generally disfavored by the courts.

The burden of demonstrating that no claim has been stated is upon the movant. In determining the motion, the court must presume all factual allegations of the complaint to be true and all reasonable inferences are made in favor of the non-moving party....

**8.** The court notes *Ferris, Oakes, Brown* and *Robertson* were decided within the past eight months by district courts in the Tenth Circuit. None of these decisions specifically discuss whether *Galloway* applies to FDIC claims against directors of failed banks, but *Oakes* expressly rejects the argument that the cause of action accrued when the imprudent loans were made. *Oakes*, No. 89–2261–S at 6. *Galloway* was briefed in *Brown*, Defendant's Reply Memorandum in Support of Motion for Summary Judgment at 13–14; however, without commenting on the argument, the Utah District Court held § 2415(b) began to run when the FDIC acquired the claim. *Brown*, No. NC89–0030G at 2–3.

**9.** The court believes this result does not raise *Cardinal*'s concern about giving the government unfair advantage in litigation opportunities, because private parties benefit from a "discovery rule" that tolls causes of action for periods during which material evidence is concealed from or otherwise unavailable to a diligent litigant. *See, e.g., Becton, Dickinson & Co. v. Reese*, 668 P.2d 1254, 1257 (Utah 1983) (statute tolled until facts forming basis for cause of action discovered, concealed facts become known, or as justice requires).

**10.** "Federal bank examinations are not beacons to light the path of erring directors or gulled stockholders." *Id.* (quoting *Harmsen v. Smith*, 586 F.2d 156, 158 (9th Cir.1978)).

Generally, the allegations of a complaint are to be liberally construed. . . .

After thus construing the complaint, the court should deny a motion to dismiss for failure to state a claim 'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.' [*Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957) (footnote omitted).]

(Footnotes and citations omitted).

Rice moves to dismiss on the grounds (1) the action is time-barred and (2) the complaint fails to state a claim against him. Because the court has already discussed Rice's statute of limitations argument, it will address only the sufficiency of the pleadings.

Rice contends the complaint does not adequately allege facts showing he personally engaged in any negligent acts or omissions or breached any duty. He argues that merely naming him as a director is insufficient to state a claim against him.

Fed.R.Civ.P. 8 requires nothing more than a short and plain statement of jurisdiction and of claims showing the pleader is entitled to relief, and a demand for judgment. Because these requirements are met in the complaint, the court agrees with the FDIC that the complaint adequately notifies the directors, including Rice, of the basis for the claims against them. The complaint names each director individually and states his role and time of service at UFB; it also alleges that each director had a duty to address and improve UFB's loan portfolio and that the imprudent loans resulted from the director's breach of his duty. The FDIC is not required to plead separate allegations against each defendant, because the complaint alleges the defendants are individually liable for the acts of the board of directors and officers as a whole and individually responsible for the loan losses.

Construing the complaint liberally, presuming all factual allegations of the complaint to be true, and making all reasonable inferences in favor of the FDIC, the court determines that Rice does not meet his burden to show the complaint fails to state a claim against him. Rice's arguments and authorities regarding the standards for proving his liability as a director are irrelevant to a motion to dismiss. Consequently, his motion is denied.

### IV. *Conclusion*

The FDIC's motion for partial summary judgment and to strike the statute of limitations defense is granted, and the directors' motions for summary judgment are denied. Rice's motion to dismiss is denied.