36 F.3d 1094
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Al THOMAS, Plaintiff-Appellee,
v.
James William ANDERSON, III, Defendant-Appellant,
and Roy L. Jones; Bar-J-Four, Incorporated, Defendants.
 No. 94-1126.
 United States Court of Appeals, Fourth Circuit.
 Argued June 7, 1994.
Decided Sept. 23, 1994.
 
 Appeal from the United States District Court for the Western District of North Carolina, at Charlotte. Graham C. Mullen, District Judge. (CA-85-138-C-MU)
 Gordon D. Booth, Jr., Booth, Wade & Campbell, Atlanta, Ga., for appellant.
 Jeffrey I. Ryen, Parker, Poe, Adams & Bernstein, L.L.P., Charlotte, N.C. for appellee.
 On Brief: L. Dale Owens, Scott A. Wharton, Booth, Wade & Campbell, Atlanta, Ga., for appellant.
 I. Faison Hicks, Parker, Poe, Adams & Bernstein, L.L.P., Charlotte, N.C., for appellee.
 W.D.N.C.
 AFFIRMED.
 Before HALL and WILKINS, Circuit Judges, and PHILLIPS, Senior Circuit Judge.
 OPINION
 PER CURIAM:
 
 
 1
 This appeal arises from a diversity action filed by Alfred W. Thomas in which he sought enforcement of a consent order entered by the United States District Court for the Western District of North Carolina settling certain claims between Thomas and James W. Anderson, III. The district court granted the relief sought by Thomas, and Anderson appealed. We find no reversible error in the district court's decision and affirm.
 
 
 2
 * Alfred Thomas invested in a partnership which owned and operated a chain of restaurants called "Po Folks" in Charlotte, N.C. and other areas. In 1985, Thomas filed suit against James Anderson and two others in connection with his "Po Folks" investment alleging, inter alia, breach of fiduciary duty, diversion of partnership assets, wrongful exclusion from partnership property, and mismanagement of the partnership.[1] Of the three named as defendants, only Anderson could be located for service. Shortly after service on Anderson, the parties' counsel reached an oral settlement, but had difficulty reducing the agreement to writing. Eventually, a consent order was entered by the district court. It is that consent order which is the subject of this action.
 
 
 3
 The terms of the Consent Order provided that Anderson would indemnify Thomas for any indebtedness for which Thomas might become liable as a result of a certain promissory note personally guaranteed by Thomas,[2] including associated expenses and attorney's fees. In exchange, Thomas agreed to have his claims against Anderson dismissed with prejudice, and to give Anderson the right to select Thomas' counsel and to control the defense of any claims arising out of the note.
 
 
 4
 At all times relevant to the original suit and the filing of the Consent Order, the United States Small Business Association (SBA) was the holder of the note. About a year and a half after entry of the Consent Order, the SBA formally notified Thomas that the note was in default. Thomas' attorney forwarded the notice of default and demand for payment to Anderson's attorney along with a copy of the Consent Order. Anderson made no payments and took essentially no action in response to the notice. For whatever reason, the SBA did not take further action until two years later when, in May and again in June of 1990 it sent additional demand letters. Thomas also forwarded these letters to Anderson, who again did nothing.
 
 
 5
 In October of 1990, Anderson hired a new attorney, William L. Harbison, to handle his affairs. The SBA issued a fourth and final demand letter in March of 1991 and Thomas, through his attorney, forwarded the letter to Harbison. Harbison apparently passed the information on to Ellen Schlossberg, who was also representing Anderson. Schlossberg contacted Thomas' attorney, suggested that they meet and explained that she intended to assert a statute of limitations defense against the SBA. In a follow-up letter, Schlossberg assured Thomas and his attorney that "Anderson intends to comply with the terms of the consent order." After much correspondence during the summer, Anderson agreed to pay Thomas' legal fees, at that time amounting to about $6,000, as he was required to do so under the Consent Order. Despite this assurance, Thomas received only one payment of $500.
 
 
 6
 In the fall of 1991, the SBA filed an action to collect on the note. A copy of the complaint was sent to Schlossberg who, in turn, sent it to Harbison. Harbison assigned a first-year associate, John H. Reinbold, to work on the case. Reinbold wrote Thomas to inform him that his firm would represent Thomas in the SBA suit. The letter continued, "This firm also represents Mr. Anderson, and will be involved in any defense of Mr. Thomas which Mr. Anderson may be obligated to undertake pursuant to the Consent Order of December 12, 1986.... Please be advised that Mr. Anderson will defend Mr. Thomas in the above-captioned lawsuit to the extent of his ability and with full reservation of the rights he may have under the Consent Order.... If you have any questions you may address them to me, or to William L. Harbison, who is Mr. Anderson's primary attorney."
 
 
 7
 After sending this letter to Thomas, Reinbold started preparing an answer to the SBA's complaint. At one point, he called Thomas to discuss the pending lawsuit. Thomas took the opportunity to ask about the status of Anderson's payments for his attorney's fees. The associate responded that he knew nothing of the attorney's fees. The district court found as fact that Reinbold then questioned Thomas about the circumstances leading to the entry of the 1986 Consent Order. Thomas testified that because of Reinbold's questions, he feared that Reinbold was seeking a way to invalidate the Consent Order. Based on this conversation and on the letter "reserving Anderson's rights," Thomas believed that Harbison and Reinbold were primarily concerned with advancing Anderson's interests, not his, and wrote a letter to Reinbold discharging his firm as counsel in the SBA action. Harbison responded by letter, claiming that as a result of Thomas' letter, Thomas had "waived any right to indemnification," and that "any obligation which Mr. Anderson may have had to indemnify and defend you is now null and void." Thomas' attorney responded by writing to Harbison and suggesting that an independent law firm be hired to represent Thomas in the SBA suit. Harbison responded that he considered it too late to do that because he believed Thomas had breached the Consent Order, thus relieving Anderson of any further obligations under it.
 
 
 8
 After this fury of letters, and despite Harbison's continued assertion that Anderson's obligations under the Consent Order were null and void, Harbison and his firm consulted with Thomas' lawyer about discovery and trial strategy. Apparently the attorneys agreed to concentrate on defending the SBA action and to reserve their dispute about the effect of Thomas' discharge of Harbison until the case was resolved. The district court rejected the statute of limitations defense advanced by Thomas and entered a judgment against him in the amount of $201,273.59 plus accrued interest. This court affirmed the judgment. United States v. Neudai, Inc., 14 F.3d 598 (4th Cir.1993) (table).
 
 
 9
 Once the SBA suit was settled, Thomas filed this action seeking enforcement of the 1986 Consent Order. Anderson's principal defense was that by discharging Harbison and his law firm, Thomas had materially breached a critical condition of the Consent Order, thereby releasing Anderson of any further obligation under it.
 
 
 10
 At a hearing before a Magistrate Judge to whom the case was assigned, Harbison testified that he did not believe he had a conflict of interest while representing both Thomas and Anderson and that his unilateral discharge by Thomas was not therefore warranted. He further asserted that it did not occur to him to warn Thomas that a potential conflict of interest could arise as a result of the joint representation or that such representation could have adverse consequences for Thomas, such as his inheriting full liability for the amount of the note. JA 554, 579. Harbison also testified that after receiving Thomas' discharge letter, he did not contact Thomas to hear his side of the dispute, or to resolve any misunderstandings that might have arisen on account of Reinbold's communications with Thomas. Instead, he sent Thomas a letter stating that as a result of his discharge, Anderson was relieved of all obligations under the Consent Order. JA 557, 562.
 
 
 11
 After hearing the testimony and considering the evidence on this critical issue, the Magistrate Judge rejected Anderson's argument that he no longer had any obligations under the Consent Order for the reason that Thomas materially breached the terms of the Consent Order by discharging Harbison and his firm. The Magistrate Judge found instead that Thomas' obligations under the Consent Order were conditioned on Anderson's proceeding in good faith, and that Anderson did not do so by continually failing to comply with his obligations under the Consent Order. The Magistrate Judge noted Anderson's failure to respond to each of the four demand letters from the SBA which were forwarded to him and his repeated but unfulfilled promises to pay Thomas' legal fees. In light of these circumstances, the Magistrate Judge also found that Thomas rightly questioned Harbison and Reinbold's loyalty to him and acted reasonably in discharging them as counsel. Finally, the Magistrate Judge determined that Anderson was in no way prejudiced by either Thomas' discharge of Harbison or the defense of the SBA action by Thomas' attorney.
 
 
 12
 The Magistrate Judge therefore recommended that Anderson be ordered to pay the full amount of the judgment against Thomas and all attorney's fees, costs and expenses arising since the SBA's first demand for payment and that Anderson be ordered to show cause why he should not be found in contempt of the Consent Order and duly sanctioned. The district court accepted the Magistrate Judge's findings and conclusions, and granted Thomas' motion to enforce the Consent Order and all specific relief recommended by the Magistrate.
 
 
 13
 This appeal followed.
 
 II
 
 14
 Under applicable North Carolina law, contract principles govern the resolution of the questions raised on this appeal, a consent judgment being considered under that law a court-approved and court-sanctioned contract. See Norton v. Norton, 332 S.E.2d 724, 729 (N.C.App.1985); Cox v. Cox, 259 S.E.2d 400, 401 (N.C.App.1979), review denied, 265 S.E.2d 394 (N.C.1980); see also George Banta Co. v. N.L.R.B., 604 F.2d 830, 835 (4th Cir.1979) (although consent orders are treated as contracts for some purposes, they are not for others; consent orders have characteristics of both contracts and judicial decrees), cert. denied, 445 U.S. 927 (1980).
 
 
 15
 Anderson claims that the district court erred in enforcing the Consent Order against him because Thomas breached the Consent Order by discharging Harbison's law firm as counsel in the SBA action, thereby relieving Anderson of his obligations under the order Anderson also challenges the district court finding that he breached the Consent Order, thereby excusing Thomas from honoring Anderson's right to select defense counsel.
 
 
 16
 Thomas contends to the contrary that the district court properly found that Anderson breached the Consent Order by failing to tender an independent attorney to defend the SBA action and by failing to pay Thomas' attorney fees in a timely manner, and that Thomas therefore acted reasonably when he selected his own attorney to defend the SBA suit on the note.
 
 
 17
 We find no error in the district court's conclusion that Anderson breached the Consent Order by failing to select in good faith an attorney to defend the action on the note. The Consent Order provided that in the event a claim was made against Thomas on the note, Anderson, "in return for being primarily liable and responsible for paying all of [Thomas'] costs, expenses, and attorneys' fees associated with the defense of such claim(s), shall have the right to select [Thomas'] counsel and shall have control over the defense of said claim(s)." Thomas v. Jones, No. 85-138-M (W.D.N.C. Dec. 12, 1986) (consent order). Anderson argues that it was Thomas, not he, that breached this provision of the Consent Order. We disagree. Implicit in every contract is the duty of both parties to act in good faith and to make a reasonable effort to comply with their obligations under the contract. See, e.g., Great American Ins. Co. v. C. G. Tate Constr., 279 S.E.2d 769, 776 (N.C.1981). Anderson breached this duty of good faith when he selected as Thomas' attorney Harbison and his firm, and when he later refused Thomas' request to appoint independent counsel.
 
 
 18
 The evidence supports the district court's finding that Thomas reasonably doubted the loyalty of the attorneys selected by Anderson. First, Reinbold's letter suggests that Harbison and Reinbold were primarily concerned with Anderson's interests rather than Thomas'. The letter "advised that Mr. Anderson will defend Mr. Thomas ... to the extent of his ability and with full reservation of the rights he may have under the Consent Order." Also, questions were to be addressed to Reinbold or Harbison, "who is Mr. Anderson's primary attorney." Second, Reinbold's questions during his conversation with Thomas about the circumstances leading to entry of the Consent Order indicated that Harbison and Reinbold's loyalties lay with Anderson, instead of Thomas. The questions suggested that Reinbold was seeking the information in order to determine the Consent Order's validity. Under these circumstances, we find no error in the district court's conclusion that Anderson did not tender counsel for Thomas in good faith and that Thomas acted reasonably in suspecting their loyalty to him and in discharging them. That Harbison did not have Thomas' interests at heart is borne out by what happened after Thomas discharged him. Harbison immediately and opportunistically declared that Thomas had breached the terms of the Consent Order, and that Anderson was now relieved of his obligations under the order. Harbison continued to represent Anderson and to advance his interests to the detriment of Thomas, his former "client." On behalf of Anderson, he flatly rejected Thomas' attorney's suggestion that independent counsel be appointed. Under these circumstances, we find no error in the district court's conclusion that Anderson breached his obligations under the Consent Order by tendering Harbison as counsel for Thomas in the SBA action, and in its rejection of Anderson's argument that Thomas breached the Consent Order by failing to allow Harbison and Reinbold to represent him in the SBA action. All the evidence suggests, as the district court found, that Thomas acted reasonably under the circumstances.
 
 
 19
 Anderson's claim that Thomas was not justified in dismissing Harbison and Reinbold because no actual conflict of interest existed between Thomas and Anderson in the underlying SBA suit misses the mark. Clearly, as far as the action by the government was concerned, there was no conflict of interest between Thomas and Anderson. However, the evidence suggests, and Thomas believed, that a potential dispute existed between the two as to Anderson' obligations under the Consent Order. This clearly constitutes a conflict of interest between the two, and it is for this reason that we agree with the district court that Thomas acted reasonably when he discharged Harbison and Reinbold. Reinbold's letter to Thomas and his questions of Thomas about the circumstances leading to entry of the Consent Order, in light of the various events that had occurred earlier,[3] called into question Harbison and Reinbold's loyalty to Thomas.[4]
 
 
 20
 Even if we were to agree with Anderson that Thomas breached the consent order by discharging Harbison's firm, Anderson would still be required to fulfill his obligations under the Consent Order because such a breach on Thomas' part would not have materially increased Anderson's risk as indemnitor. The district court found that Anderson was not prejudiced by Thomas' selection of counsel and his control of the defense of the SBA action, and the record supports that conclusion.
 
 
 21
 We have considered Anderson's remaining arguments and find them also to be without merit. For the foregoing reasons, we affirm the district court's finding that Anderson breached the Consent Order by tendering as counsel an attorney whose loyalties to Thomas were questionable, and its order enforcing the terms of its Consent Order.
 
 AFFIRMED
 
 
 [1]
 Anderson apparently has faced numerous claims in connection with his investment in "Po Folks." He attributed most of his problems to another of the named defendants, his partner, Roy Jones, who could not be located for service
 
 
 [2]
 The note was between Momes Capital Corporation and Neudai Inc. and in the principal amount of $125,000
 
 
 [3]
 Among other events, we note Anderson's failure to respond to the SBA's first three demand letters, and his repeated but unfulfilled promises to pay Thomas' legal fees. We need not express an opinion as to whether these actions constituted a breach of the terms of the Consent Order, but observe that these actions on Anderson's part do clearly suggest, as the district court obviously believed, that he was resisting compliance with the Consent Order at every turn
 
 
 [4]
 On this appeal, Anderson takes issue with some of the evidence relied upon in the Magistrate Judge's Report. Because we find that the Reinbold telephone conversation and letter support the district court's holding, as well as Harbison's actions subsequent to his discharge, we have no need to address these contentions